## Anna B. O'Day v. Chicago & Alton R. R. Co.

1. RAILROAD COMPANIES—*Duty Owed to Car-cleaners of Other Companies as Mere Licensees.*—The duty owed by a railroad company to a person not in its employ, but engaged in cleaning the cars of another company left upon its track by permission for that purpose, is not to be reckless of the safety of such person.

2. ORDINARY CARE—*Defined.*—The definition of ordinary or reasonable care is that care which prudent persons usually exercise, or, as applied to a particular case, is that care which a prudent person would exercise under like circumstances.

3. SAME—*Degree of Care to be Exercised by Persons Working in Dangerous Places.*—Persons who work in dangerous places are bound to exercise such care for their safety as the obvious dangers of the place require.

4. ERROR—*Not to be Assigned for Failing to do that Which the Court is Not Asked to do.*—The action of a court can not be assigned for error in failing to do that which it was not asked to do.

**Trespass on the Case,** for personal injuries. Error to the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed November 1, 1901.

Anna B. O'Day, the plaintiff below and plaintiff in error here, entered into the employ of the Pullman Palace Car Company some four or five weeks prior to the date of the injury which she sustained on February 6, 1895, at about ten o'clock A. M. Her services during this period were not

continuous, but she served from time to time in a substitute capacity, assisting in the cleaning of sleeping cars owned by the car company and in use by various railroad companies. At first she was assigned to duty in the "yards" of the Santa Fe Railroad Company, and then, on the seventh day preceding her injury, to those of the Chicago & Alton Railroad Company.

On the morning of the day and at about the hour mentioned, plaintiff in error had been engaged in cleaning one of the sleeping cars which were in use by the Chicago & Alton Railroad Company, on what was known as its "St. Louis train." This entire train, consisting of five, six or seven cars, according to the varying testimony of witnesses, on the morning in question had, in pursuance of the daily custom, been placed on a sidetrack in the "yards" of the Chicago & Alton Railroad Company for the purpose of being cleaned. These "yards," located at Harrison street and under what is commonly called "the viaduct," contain a series of ten or more parallel tracks, which are supplemented on the west by four additional ones which are known as the "main tracks." These yard tracks were used for the purpose of placing cars there to be cleaned, watered and repaired and otherwise put in condition for re-use by the Chicago & Alton Railroad Company. On the day in question these "yard tracks" were crowded with trains which lay so close, one to the other, that "their roofs almost touched." The plaintiff in error had just stepped from the inside of one of the sleepers on which she had been working to its platform, which was the second one from the north, and a distance of about two hundred and forty feet from the extreme platform at the south end of the train. On one arm she carried a basket of rags and carried with the hand of the other, a bucket of water; while she grasped with her hand the hand-rail of the car, the train was moved by a switch engine approaching from the south, and she was thrown and injured. The brief of plaintiff in error says:

"The theory of plaintiff in error upon which the claim of recovery is based is:

First.   That appellee owed to appellant the duty of a warning before it moved the train on which she was employed; if not by sending an employe, at least by the ringing of a bell or the sounding of a whistle; and

Second.   That irrespective of the duty to warn, the moving of the train should have been accomplished without unnecessary jar, and that the contest below on the facts narrowed itself to the following issues:

(1)   Was the bell rung?
(2)   Was the train moved without a jerk or a jar?
(3)   Was the plaintiff in error thrown or did she slip?
(4)   Was plaintiff in error guilty of contributory negligence?"

W. CLYDE JONES and KEENE H. ADDINGTON, attorneys for plaintiff in error.

SCOFIELD & BROWN, attorneys for defendant in error.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The plaintiff, so far as appears, was at no time in the service of the defendant nor did the defendant have notice of her presence in or about its yards.

The only information that the defendant had that cast upon it any duty with respect to her was that car cleaners at times worked in its yard cleaning Pullman cars there left for that purpose; it was not informed that she or any persons were in the train which it moved.   Such being the case, she being, as regards the defendant, a licensee only, the duty it owed to her was not to be reckless of the safety of her as one of those who might, in the discharge of duty, be in or coming out of Pullman cars; to do what it did with due regard to the possibility that Pullman cars might be occupied by cleaners.   Bolch v. Smith, 7 Hurl. & Norman, 736–743.

Whether such duty required the defendant before moving such cars to give notice by ringing a bell or sounding a whistle, or whether the defendant was required to move the cars without "jerk or jar" would, in the absence of any evidence as to rule or custom known to her, seem to be questions of fact.

The cars were not on a track from which passengers were received or discharged, but on a side or storage track. The plaintiff was engaged in work manifestly hazardous, as is all work in a railroad yard, and she was bound to look out and use as much care and caution for her safety as the manifest hazards, uses and business of the place required.

Four witnesses testify that the bell was ringing as the engine approached the cars and made connection therewith. The plaintiff and one witness testify that they heard no bell. The plaintiff alone testifies that " engine bumped train and threw her." Jennie Wilcox testified that she " heard the engine come and bump the train and knew it had moved." No one, save the plaintiff, and Louis Hartweg, saw the accident. He declares that the bell was ringing and says : " Saw her when she fell; train was moving south; the train started to move very slow."

The plaintiff testified that she " stepped on platform; had a pail of water and a basket on my arm; took hold of railing with my hand; engine bumped train; threw me and struck back on steps." It appears to have been snowing at the time of the accident. That there is usually a shock or jar when an engine connects with a train is well known; whether the " bump " in this case was more than is usual or more than was reasonably avoidable was not shown. In what way the failure to ring a bell, if such failure there were, contributed to the accident was not shown. The plaintiff's witness, Jennie Wilcox, cleaning cars with the plaintiff, does not speak of the " bump " as anything severe, unusual, or avoidable. But the plaintiff does say that the " bump " threw her on her back.

The rules of the Alton railroad, for which the plaintiff was not working and of which she had not been informed, should not have been admitted in evidence. Nor should the thirteenth instruction have been given at the instance of the defendant. Upon certain persons, as common carriers, the law imposes the highest degree of diligence. Ordinarily the duty or obligation as to care is determined by the circumstances. It can not be said that as a matter

of law the presence of danger and impending disaster "involves the exercise of the highest degree of vigilance and care" for one's own safety. Man is ever in the presence of danger, and ofttimes of disaster, without the danger being very great or his having notice of either. Nor do we regard the following instruction one that should have been given:

"The court instructs the jury that the requirement of the law that the plaintiff shall prove each and every material allegation in her declaration, or some count thereof, before she can recover, is one of the requirements that is as binding upon you in this case as any other obligation; and even in this case, if you should believe that the testimony is evenly balanced, under the law and your oaths, your verdict should be for the defendant."

The definition of ordinary care " or reasonable care " is that care which " prudent persons usually exercise; " as applied to a particular case, is that care which prudent persons would exercise under like circumstances.

The seventh instruction was faulty in making use of the term " ordinary persons " instead of " prudent persons." Nor should instructions have been given speaking of risk assumed by the plaintiff.

As the plaintiff was never in the employment of the defendant, neither, with respect to the other, assumed any risk.

The plaintiff knew that she worked in a perilous place, that the cars she cleaned were liable to be moved at any moment, and she was bound to exercise such care for her safety as the obvious dangers of the place required.

The plaintiff did not submit any special interrogations to be answered by the jury; the defendant did, but they were not given; the court of its own motion prepared and submitted three, which the jury did not answer.

The plaintiff did not ask the court to direct the jury to retire and answer their questions, but merely excepted to the action of " the jury in failing to answer " the special questions.

This action of the jury can not be assigned for error, nor

can the action of the court in failing to do what it was never asked.

Notwithstanding the errors pointed out, we think that the judgment should be affirmed.

The plaintiff made no case entitling her to a verdict. The evidence that the defendant was negligent was not such that reasonable men could come to the conclusion that she had established by a preponderance of the evidence the allegations of her declaration.    Affirmed.